IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| GAARIES WILLIAMS § | | |
|     TDCJ-CID #1428755 § | | |
| V. § | | C.A. NO. C-07-209 |
| § | | |
| NUECES COUNTY, ET AL. § | | |

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Pending is defendant Dr. William Flores' motion for summary judgment to dismiss plaintiff's Eighth Amendment deliberate claims of deliberate indifference to his serious medical needs. (D.E. 52). Plaintiff has filed a response in opposition, (D.E. 57), to which defendant has filed a reply. (D.E. 60). For the reasons stated herein, defendant's motion is granted, and plaintiff's claims are dismissed with prejudice.

**I.     Jurisdiction.**

The Court has federal question jurisdiction. 28 U.S.C. § 1331. Upon consent of the parties (D.E. 22, 30), this case was referred to the undersigned United States magistrate judge to conduct all further proceedings, including entry of final judgment. (D.E. 33). See 28 U.S.C. § 636(c).

**II.    Procedural background.**

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"). Proceeding pro se,[1] he filed this lawsuit on May 4, 2007, complaining that, during his confinement at the Nueces County Jail between January

---

[1] Plaintiff is now represented by counsel.

9 through April 29, 2007, he was denied medication and treatment for his diabetes, hepatitis C, carpal tunnel syndrome, and post traumatic stress disorder ("PTSD"). (D.E. 1). Following an evidentiary hearing, Dr. William Flores, the contract jail physician, and Nueces County, the jail operator, were identified as the proper defendants and service was ordered thereon.

On October 1, 2007, defendants filed their answer (D.E. 28) and, simultaneously, moved to dismiss plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.E. 27). By order entered February 4, 2008, plaintiff's deliberate indifference claims against Nueces County were dismissed, but his claims against Dr. Flores were retained. (D.E. 45).

On September 19, 2008, Dr. Flores filed the instant motion for summary judgment. (D.E. 52). On November 11, 2008, plaintiff filed a response in opposition. (D.E. 57). On November 20, 2008, defendant filed a reply to plaintiff's response. (D.E. 60).

### III. Summary judgment evidence.

In support of his motion for summary judgment, Dr. Flores offers the following evidence:

| | | |
|---|---|---|
| Ex. A: | Plaintiff's Nueces County jail medical records;[2] | |
| Ex. B: | Dr. Flores' declaration under penalty of perjury; | |
| Ex. C: | Affidavit of Patrick Jennings, R.N.; | |
| Ex. D: | Jail's Medical Services Policy and the Jail's Inmate Rules and Regulations; | |

---

[2] Plaintiff's medical records are filed under seal at D.E. 29.

  Ex. E:  Health Services Agreement between Jail and Christus Spohn Health System;

  Ex. F:  Affidavit of Julie Guerra, Director of Human Resources for Nueces County;

  Ex. G:  Personnel records for Dr. Flores;

  Ex. H:  Records regarding plaintiff's arrests and offenses; and

  Ex. I:  Description of plaintiff's prescribed medications.

D.E. 52.[3]

In his response, plaintiff offers two affidavits, each dated November 11, 2008. (D.E. 57).

The uncontested evidence establishes the following:

On December 12, 2006, plaintiff was arrested in Harrison County Mississippi. Thereafter, he was transported to the Nueces County Jail, arriving there on January 9, 2007.

Upon his arrival at the jail, plaintiff underwent a medical intake screening. (DSJ Ex. A at 91-94). Plaintiff reported a history of PTSD, bi-polar disorder, diabetes mellitus (Type II diabetes), high blood pressure, and a skin rash. Id. at 91. He was carrying a prescription for Enalopril when he arrived. Id. at 94. His blood sugar measured 225, and a diabetic protocol was ordered. Id. He was accepted into the jail and the nurse ordered follow-up appointments at sick call and with the jail psychiatrist. Id. at 91, 93.

---

[3] Reference to defendant's motion for summary judgment, D.E. 52, is to "DSJ" followed by an exhibit letter and page reference. Reference to plaintiff's response, D.E. 57, is to "PR" followed by the affidavit number (1 or 2) and paragraph reference.

On January 10, 2007, plaintiff was seen by a jail physician's assistant ("PA"). (DSJ Ex. A at 13). The PA noted that plaintiff had not received any prescribed medications except Enalopril while in the Mississippi jail. Id. at 56. Dr. Flores prescribed him Lisinopril, Omeprazole, Pergogesic, Aspirin, and insulin. Id. at 57, 167-68.

Also on January 10, 2007, plaintiff was seen by the jail psychiatrist, Dr. Quazi Imam. (DSJ Ex. A at 58). Plaintiff complained that he could not sleep, but he denied hallucinations or any suicidal ideation. Id. Dr. Imam prescribed Trazodone. Id.

On January 11, 2007, plaintiff submitted a sick call request ("SCR") complaining of itching, abdominal pain, and facial skin rashes. (DSJ Ex. A at 90). He was seen by medical the next day. Id. at 55. The Pergogesic was discontinued, and plaintiff was prescribed Benadryl, Naprosyn, and Hydroxyzine. Id. at 55.

On January 17, 2007, plaintiff was seen by medical for complaints that his skin condition had worsened. Id. at 85-86, 48. He was prescribed a hydrocortisone ointment and Nasonex. Id. at 48.

On January 19, 2007, plaintiff complained that the Trazodone prescribed by Dr. Imam did not help him with his sleeplessness, and he requested that Seroquel be prescribed. Id. at 84. The nurse informed him that Dr. Imam would not prescribe Seroquel, and that he would be continued on the Trazodone. Id. On January 20, 2007, Dr. Imam prescribed three additional medications: Haldol, Ativan, and Cogentin. Id. at 155.

On January 22, 2007, plaintiff requested a refill of the hydrocortisone ointment. Id. at 53. It was filled the next day. Id.

4

On January 30, 2007, plaintiff was seen in the infirmary complaining of a sore throat and requesting a refill on the hydrocortisone and his pain medication. Id. at 51. His cortisone and Naprosyn were refilled, and he was also prescribed a cough medication. Id.

On February 5, 2007, plaintiff was seen in the infirmary requesting a refill on the hydrocortisone cream. Id. at 46. The prescription was refilled. Id.

On February 7, 2007, plaintiff reported to the infirmary complaining of itching all over his body, although he could not see a rash, a painful neck, and sinus pain. Id. at 45. The PA prescribed Atarax for itching and restarted him on Percogesic. Id.

On February 13, 2007, plaintiff reported to the infirmary requesting Nasonex nasal spray for a cold. Id. at 42. The prescription was filled. Id. On February 16, 2007, he was continued on the nasal spray. Id. at 38.

On February 19, 2007, plaintiff complained that he needed more hydrocortisone, and it was refilled. Id. at 36.

On February 28, 2007, Dr. Imam continued plaintiff on his current psychotropic medications and denied his request for Seroquel. Id. at 34.

Throughout March 2007, plaintiff repeatedly requested refills on his Atarax, hydrocortisone, pain medications. Id. at 67, 69, 70, 71, 72, 73. Dr. Flores approved all of his refill requests. Id. at 26-33.

On March 2, 2007, plaintiff complained of neck pain due to "severe degeneration at disc C3-C4." Id. at 73. He stated that he needed more surgery, and he asked that his freeworld doctor be contacted. Id.

On March 25, 2007, plaintiff asked that Interferon treatment be started for his Hepatitis C. Id. at 66. he was advised that interferon treatment was not prescribed at the jail.

On April 3, 2009, plaintiff was seen in the infirmary complaining of hand pain. Id. at 73. Plaintiff reported that the pain had first started in jail in Mississippi. Id. The PA prescribed him Motrin and discontinued the aspirin. Id.

On April 11, 2007, plaintiff was seen in the infirmary for continued complaints of hand pain. Id. at 21. He was continued on Motrin. Id.

On April 23, 2008, plaintiff was seen by the PA for complaints of hand pain, abdominal pain, and rectal bleeding. Id. at 18. He reported feeling angry. Id. The PA's plan of action included scheduling a psychiatric exam, a complete blood work-up, prescriptions for colitis, and discontinuance of Motrin and Disalcid. Id. He told plaintiff that a wrist splint might help with his hand pain, and stated that he might be able to get one once in the TDCJ.[4] Id.

Plaintiff's lab work came back that same day and revealed that his blood sugar was at a critical level of 556. Id. at 89, 190, 16. Dr. Flores was contacted and he ordered immediate insulin treatment. Id. Plaintiff received insulin within one hour of the lab reports. Id. at 16. Dr. Flores also ordered a diabetic protocol, and plaintiff's blood sugar was monitored each time he was given insulin, from April 23, 2007, until he left the jail on April 29, 2007. Id. at 89.

---

[4] Plaintiff was transferred to the TDCJ-CID within less than a week.

On April 24, 2007, Dr. Flores met with plaintiff to discuss insulin therapy. Id. at 15. Plaintiff told Dr. Flores that he had experienced diabetic symptoms, but he did not "bring up" his symptoms with medical personnel. Id.

As of April 29, 2007, plaintiff's listed medical conditions for purposes of his transfer to the TDCJ were: asthma, hypertension, diabetes (insulin dependent), chronic abdominal pain, allergic rhinitis, acid reflux, arthritis, and hemorrhoids. Id. at 5-6. Plaintiff's weight was 213 pounds, that is, one pound less than when he arrived in January. Id. at 13.

## IV.    Summary judgment standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses. See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent

to testify on the matters stated therein." FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56©; Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## V.     Discussion.

Plaintiff complains that, during his four and a-half months stay in the jail, Dr. Flores failed to prescribe the necessary medications to control properly his blood sugar or to treat his PTSD, but simply prescribed inadequate medications over his objections and without examining him. Plaintiff claims that, while at the jail, he lost 35 pounds, was constantly fatigued, and had symptoms of frequent urination and bloody stools. His hands cramped constantly, a condition plaintiff attributed to carpel tunnel syndrome; however, TDCJ medical officials have since diagnosed the pain as diabetic neuropathy. Plaintiff maintains that the diabetic neuropathy was caused because he did not have the proper diabetes medication while in the jail. Plaintiff concludes that Dr. Flores was deliberately indifferent to his health and safety because he failed to control properly his blood sugar or to treat his PTSD.

### A.     Deliberate indifference to serious medical needs.

The Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation omitted). A prison official violates this duty when by act or omission he is deliberately indifferent to prison conditions which pose a substantial risk of serious harm. Id. at 834.

In order to state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S. 294, 303.(1991); Estelle v. Gamble, 429 U.S. 97, 105 (1976);

Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference encompasses more than mere negligence on the part of prison officials. Farmer, 511 U.S. at 837. It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving the risk, must deliberately fail to act. Id. Furthermore, negligent medical care does not constitute a valid § 1983 claim. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). See also Graves v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) ("[i]t is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim"). As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). Finally, active treatment of a prisoner's serious medical condition does not constitute deliberate indifference, even if treatment is negligently administered. See Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999); Mendoza, 989 F.2d at 195; Varnado, 920 F.2d at 321. "Deliberate indifference is an "extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).

### 1. Plaintiff's PTSD.

Plaintiff charges Dr. Flores with failure to treat his PTSD. However, Dr. Flores is not a psychiatrist, and he does not diagnose or treat psychiatric disorders. (DSJ Ex. B, Flores' Dec. at ¶ 2). Instead, at the jail, psychiatric services are provided by a licensed psychiatrist. Id.

Plaintiff's uncontested medical records demonstrate that plaintiff was screened by jail staff at his initial medical intake on January 9, 2007. (DSJ Ex. A at 91-93). The nurse noted

his history of PTSD, and scheduled him to meet with the jail psychiatrist. Id. at 91. Plaintiff met with Dr. Imam on January 10, 2007. Id. at 58. Plaintiff complained that he could not sleep, and Dr. Imam prescribed Trazodone, an oral antidepressant. Id.; DSJ Ex. I at 4. On January 19, 2007, plaintiff requested that he be prescribed Seroquel[5] instead of Trazodone, but Dr. Imam disagreed. Id. On January 20, 2007, Dr. Imam instead prescribed Haldol, an antipsychotic medication , Cogentin, a medication to treat side-effects of other drugs, and Antivan for anxiety. Id. at 155; DSJ Ex. I at 5-7.

Plaintiff repeatedly requested to be prescribed Seroquel; however, the medical staff forwarded those requests to Dr. Imam, not Dr. Flores. (DSJ Ex. A at 74, 75, 76, 82, 84). Thus, Dr. Flores was not involved in treating plaintiff's PTSD. To the extent Dr. Flores reviewed and approved Dr. Imam's decisions, plaintiff has failed to establish that he suffered any injury as a result of the manner in which Dr. Imam treated his PTSD that could be attributable to Dr. Flores. At best, plaintiff had a mere disagreement with the course of treatment prescribed by Dr. Imam. This allegation fails to state a claim against Dr. Imam, let alone Dr. Flores. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (mere disagreement with medical treatment provided does not state a constitutional violation). Accordingly, Dr. Flores is entitled to summary judgment in his favor as to plaintiff's claims against him concerning treatment of his PTSD.

---

[5] Seroquel is an antipsychotic drug used for treating schizophrenia and bi-polar disorder. (DSJ Ex. I at 1).

### 2. **Plaintiff's diabetes.**

There is no dispute that, upon his initial arrival at the jail, plaintiff's blood sugar level was 225. (DSJ Ex. A at 95). A diabetic protocol was ordered, (id. at 59, 94), and by January 12, 2007, his blood sugar was lowered to 112. Id. at 95. Further, there is no dispute that, after January 12, 2007, plaintiff's blood sugar was not monitored until April 23, 2007, when he was in a critical state with a blood sugar reading of 556. Id. at 16. Thus, the issue is whether Dr. Flores was deliberately indifferent to plaintiff's serious medical needs because plaintiff's diabetes was not properly monitored from January 13, 2007 through April 22, 2007.

In his sworn declaration, Dr. Flores states that on January 12, 2007, he specifically ordered weekly diabetic testing of plaintiff. (Flores' Dec. at ¶ 4). Indeed, on January 12, 2007, Dr. Flores *did* order weekly charting of plaintiff's glucose levels. (See DSJ Ex. A at 95). However, this order did not get transcribed into plaintiff's medical notes, and as such, the medical staff did not take weekly glucose readings. (Flores' Dec. at ¶ 5). Dr. Flores never saw the diabetes monitoring sheet again because those charts are kept separate from the patient's medical file that is presented to Dr. Flores for review. Id.

Dr. Flores admits that plaintiff made several complaints concerning his hands that are consistent with diabetic neuropathy; however, he states that diabetes would not be the first suspected cause. (Flores' Dec. at ¶ 6). Dr. Flores notes that neuropathy in the hands can be caused by compression of the cervical spine, shoulder or elbow. Id. Indeed, on March 2, 2007, plaintiff complained about severe disc degeneration at C3-C4. (DSJ Ex. A at 73). In addition, carpal tunnel can also cause this symptom, and plaintiff complained of this

12

condition, too. Id. Dr. Flores also maintains that it is doubtful that a three to four month lapse in diabetes treatment alone would lead to a human insulin-dependence thereafter. Id. at ¶ 7.

In his response, plaintiff testifies that many of the jail personnel remembered him from past incarcerations and were aware that he was diabetic. (PR, Williams' Aff't 1 at ¶ 2, ¶ 6, ¶ 10). He states that he repeatedly asked for diabetic treatment, but in response, he got the "run around" for four months, and was told that his medical files from past incarcerations could not be located. Id. at ¶ 6, ¶ 11, ¶ 12. He would ask the guards including "Smitty," "Guzman," and "Hosey," about his diabetic snacks, insulin, and advania. Id. at ¶ 7. The guards would sometimes give him diabetic snacks, but told him they would have to talk to medical about insulin, advania and a special diet. Id. He admits, however, that "[a]s far I [sic] know, the guards and the Sheriff's department never 'got on' the medical staff for denying me treatment for diabetes." Id.

Taking plaintiff's testimony as true, he establishes that some jail employees knew he was diabetic and that his medical files from past incarcerations were missing. However, he fails to allege, let alone prove, that *Dr. Flores* recalled him from past incarcerations or knew at this time that he was suffering from uncontrolled diabetes. Although he claims that he repeatedly told jail personnel of his diabetic condition and his need for medication, nowhere in the twenty-seven grievances that he filed during this incarceration does he ask for diabetic medication or snacks, nor does he allege that his diabetes is not being treated. (See DSJ Ex. A at 60-90). Moreover, at the times he was seen in the infirmary, he did not tell the PA or a nurse that he was not receiving the proper care for his diabetes. Id. at 18, 25, 45, 48.

13

Further, plaintiff did not specifically ask to see Dr. Flores due to problems with his diabetes.

Plaintiff simply cannot establish that, even if Dr. Flores *should have* been aware of his diabetic condition, that he *was* aware and then deliberately failed to treat him. Farmer, 511 U.S. at 837. And, even if plaintiff could show that Dr. Flores was aware of his diabetic condition by virtue of having his medical file before him when responding to a medical request, that he deliberately ignored plaintiff's diabetes as plaintiff *never directly complained in a grievance that he was not receiving proper treatment for his diabetes.* Indeed, plaintiff admits that, although he told the jail staff about his diabetes, he is not sure if they reported his condition to medical. (PR Ex. 1 Williams' Aff't at ¶ 7). To the extent Dr. Flores should have suspected uncontrolled diabetes when plaintiff began to complain about his hands, his failure to do so amounts to no more than negligence, which is not actionable. Estelle; 429 U.S. at 105; Whitley v. Albers, 475 U.S. 312, 319 (1986) ("[i]t is obduracy and wantoness, not inadvertence or error in good faith" that characterizes the prohibited conduct).

Plaintiff's medical records establish that, during his January-April 2007 incarceration at the jail, he repeatedly filed medical requests which were always responded to and, in most cases, responded to in the manner plaintiff sought. It was an unfortunate accident that Dr. Flores' January 12, 2007 order to monitor plaintiff's blood sugar was not transcribed, and therefore, not followed. However, plaintiff was obviously a vocal patient with the intelligence to advocate for his own health needs. The record is devoid of any communication to Dr. Flores seeking specific diabetic care or alerting him to the problem that Dr. Flores then ignored. As such, plaintiff fails to establish that Dr. Flores was

deliberately indifferent to his serious medical needs, and summary judgment is granted in his favor.

**IV. Conclusion.**

For the reasons stated above, defendant's motion for summary judgment (D.E. 52) is hereby GRANTED.  Plaintiff's claims are dismissed with prejudice.

ORDERED this 13th day of January, 2009.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE